A substantial portion of the sentence that my client is serving is for the 60 months for the unloaded shotgun that was found under the dresser in his motel room. And of course the issue that I want to concentrate upon is whether the evidence was sufficient to show that that unloaded shotgun was possessed by my client in furtherance of a drug conspiracy. I believe the government only proved satisfactorily that the gun could have possibly been used to further the drug conspiracy, but they fell far short of establishing by substantial evidence that it was possessed for the purpose of furthering a drug conspiracy. But what does it mean to possess something in furtherance of a conspiracy? I understand why this all came about, but possessing something seems like a passive thing, and then it's supposed to be in furtherance of a conspiracy. Does that mean with the purpose of, in case something happens? What does it mean to possess something in furtherance of a conspiracy? I think it means that it advances the purpose of the conspiracy. It helps the conspirators carry out their purpose, that is to obtain drugs illegally and to distribute the drugs illegally. But simply having it, because we know that you don't have to use it, because that's a different crime. True. A person doesn't have to. I can see that there need not be proof, and I hope I'm understanding you correctly. I have to confess that my hearing is beginning to fade on me these last few years, but perhaps you should ask me again later. In trying to see whether your client possessed something in furtherance of the drug conspiracy, one has to understand what it means to possess something in furtherance of a conspiracy. So does it mean having something with the intent of using it if you need to, or what exactly does it mean? I think it means that it facilitates the object of the conspiracy being achieved. That, for instance, or once the objects of the conspiracy are achieved, it facilitates retaining the proofs, the profits of the conspiracy. So you have it, because if you displayed it, for example, during a drug deal, then you'd be using it, right? So this is not using it. It's possessing it in furtherance. Yeah. I think that the possession prong of the statute is a little different than the carrying or brandishing the weapon prongs of it. It's true that there's at least one case from this district. I think it's the Krause case, which affirmed a conviction, but there was no evidence that the weapons, the multi-loaded weapons, were actually brandished or carried, just that they were there in proximity to the drugs. See, I think our challenge is that it's not use or brandishing, and it's not just possession, but it's possession plus, and we have to figure out how do you draw the line, because under the definition you suggested, which if you had possession of something and it could assist in the object of the conspiracy, then you'd say, well, a reasonable juror could have thought, look, he's got this thing hidden behind this dresser, and if something comes up, he can use it, because he's definitely in the drug conspiracy, the jury finds. So why isn't the proximity of the weapon plus the nature of the drug conspiracy such that he has it in furtherance? Because it, well, over and above the fact that there was no ammunition for the gun, over and above that, there was just no, just not even a scintilla of evidence that this gun, and who knows how long it was there, it could have been placed there hours or the day before my client was arrested finally on February 3rd, in other words, it could have been possessed for just a few hours before the conspiracy was terminated. We don't know when the weapon was there, but assuming the weapon was there all the time, all during the course of the conspiracy. From all the surveillance testimony that the record discloses, there was never any suggestion that at any time my client was armed, had the weapon with him. For instance, when he was arrested on February 3rd over at his grandmother's, or near his grandmother's apartment, he had no weapon with him. His father... But more than that, there was no evidence there was any drug dealing going on in that apartment. Oh, no, at the... At the place where the gun was found, at the motel. Well, the government tried to establish some evidence that there was some evidence... People came and went, but that's all we know. That's right. I guess that people come and go to your house all the time, right? Well... And it's not probably evidence of drug dealing. And maybe another thought that occurred to me as I was reading this over the other day, another fact is, perhaps one of those late night visitors gave my client the shotgun the very night before he was arrested. And maybe he gave him the shotgun in partial payment or total payment of some drug debt. But that... The evidence doesn't even show that there were mostly late night visitors. The evidence shows there were mostly day visitors, and there might have been a couple of late night visitors. The motel owner said that they were mostly during the day, there were some late at night. Yes, they were, you know, later than night visitors I usually have, yes. And yes, that suggested that perhaps they're drug dealers, or perhaps they're drug purchasers. But there was no... That's what the government proved here. They proved that my client could have engaged in drug sales from his apartment. But they never proved that he actually did. And am I correct that there are no drugs at the motel? Only drug slips? That's correct. And prescription pads? That's absolutely correct. And there was no substantial money there either. Another interesting thing to me is that even though the expert, the government expert who was called, who testified as to intimidation and to protection as a way to... Even an unloaded shotgun can be used. My client was arrested... When he was arrested, near his grandmother's apartment, had over $2,000 in cash with him. He didn't have any gun with him. His father had... After the arrest took place, my client was in a separate place than his father. My client was arrested near his grandmother's apartment. At that time, he had cash with him, but no gun. Not that shotgun or any gun. So the cert has actually pointed in the direction of this gun had nothing to... This shotgun had nothing whatever to do with the drug conspiracy. His father, on the other hand, when he was arrested at the McDonald's shopping parking lot, had a loaded .38 caliber gun. That gun is a classic example of a gun possessed to further the obvious of a conspiracy or the obvious of a drug trafficking crime. But it's difficult for me to conjure up a more extreme example of where a gun is just possessed and has nothing whatever to do with the drug trafficking. No one ever saw a gun. No one ever saw something that looked like a gun. No one heard a gun being ratcheted late at night when he had his visitors. It's just sheer speculation. My client was a drug dealer. There's no question about that. He was tried by a jury. And drug dealers have, I suppose, a well-earned, low-esteem reputation. Jurors don't like drug dealers. No one does. And when this expert got up there, this special agent, Baumgart, and said this, the jury had to know he was talking about the unloaded shotgun because he talked about unloaded guns, that it could be used to intimidate. And even if they had ammunition, the agent said they could go out and get ammunition easily, but not at 1 o'clock in the morning. You don't buy ammunition. But once the jury heard this expert testimony, that was like the architect, the way that they could convict the client, the defendant who they didn't like because he was a bad person and was doing bad things and making lots of money at it. But that was a jury. Do you want to save the remaining time for rebuttal? Your choice. How much time do I have left? You have a minute left. I'll save it. All right. Thank you. May it please the Court. Andrea Russi for the United States. The government concedes that this case presented a triable issue, and it certainly was not an overwhelming case for the government. But the government presented the evidence to the jury, and the jury found it sufficient to convict the defendant of possessing the shotgun in furtherance of the drug conspiracy. So what is the evidence that you would say distinguishes this case from the case in which somebody could possess a gun and not have it be in furtherance of a drug conspiracy if they were part of a drug conspiracy? I think the evidence here was that the shotgun was found in the front bedroom of the motel, which was defendant's living area. And it was found next to the key elements for this drug conspiracy, which were all of the prescription drug documents. Yes. But as I understand it, and you can correct me if I'm wrong, those were being used not in that place. In other words, they were prescriptions that would be used to go somewhere else and get the drugs and go somewhere else and sell the drugs. But there's no connection between the fact that he had those prescription documents, that anything directly connected to the conspiracy was going on in the apartment. He had them because it was part of the conspiracy and because he was going to use them, but not in that place. Well, in addition to the prescriptions. Am I correct about that? I mean, that is the import of the prescriptions. It's not that somebody's going to – it's that the prescriptions are going to be used to go somewhere else to get the drugs and then somewhere else to sell them. That is correct. The prescriptions were taken to the Rx Pharmacy to purchase the drugs. So it has nothing to do with something going on in that place. Well, in addition to those prescription drugs and the authorization forms, there were also priceless notes, handwritten notes by defendants. Right. And he was part of the conspiracy and he would have that. He was doing a business, but he wasn't doing it there to any – or there's no evidence that he was doing it there. Well, I think the jury could have concluded that based upon these priceless, he was selling out of the motel room based upon the three to four visitors per week when no visitors were allowed, some of which who came at night. The jury could conclude that he was, in fact, selling drugs out of the motel room. Well, apparently that's his house, though. I mean, we call it a motel, but let's be honest. Right, it's a motel. He unfortunately lives in a motel. Yes. And he lives there with his 12-year-old son? Correct. So I'm just hard-pressed to think that you can't have anybody visit you. I mean, I know in these hotels you're not supposed to have visitors, but you can't have – if that's your home and your life, that the fact that you have visitors is somehow an inference that you're selling drugs when you have no agent, no witness, no testimony on that topic. I mean, that's a pretty thin inference. It is, I think, by itself. But if you combine it with the fact, for instance, that defendant's nickname was Pee-Wee, there were authorization forms with Pee-Wee on them. There were bags at the pharmacy when the pharmacy was searched that said – He got convicted of drugs. I mean, we know he's a drug dealer that gets convicted. The question is, is he going to get this different sentence? Because he had a firearm in furtherance. And the difficulty, I think, is figuring out what's the difference between mere possession. Because, in other words, if you are a drug dealer and you have a gun at your house, under your theory it would be hard-pressed to say that every drug dealer who had a gun at his house is in furtherance of a conspiracy. Well, I think that the difference is if you look at what defendant's intent was here. This Court has said that in determining whether there's a nexus or whether something is in furtherance, you look at defendant's intent. And I think here the jury could have concluded his intent was to protect all of these valuable prescription drugs and authorizations. But there weren't any in the house. At the time it was searched. I don't know that that means they never – Or any other time anybody ever knows that. I mean, in other words, there was some testimony by the motel people that they never saw any drugs there either. That's correct. But I think that the jury could have concluded he would have – He also had a child living with him, which seems to me to have some significance as well. A, it might explain why there were no drugs in the house. B, it might explain why the gun was hidden. I think that, and as well as the fact that his home was a motel room, which the cleaning staff and the motel manager could access at any time. So the jury could have concluded from that, even if he was selling drugs, he took home whatever amount he needed to sell that night, and the drugs were actually stored at his grandmother's apartment. Well, they could have guessed that, but it would have been nothing but a guess. Well, I think that the bags at the pharmacy that were marked Pee Wee, the jury could have concluded that those are the ones that went home with him. Well, that he was going to sell, but whether it went home with him is another question. We know he was selling drugs. We know he was. I think in addition to the drugs, the jury could also include his intent was to protect the money that he had. When he was arrested, he had $2,000 on him living in the motel. This is a man who had no employment, paid for his motel room in cash, and wanted to protect that money. Was the jury instructed with any specificity on what this meant? Further instructions? I think the jury was instructed that they had to find that the shotgun promoted or facilitated the drug trafficking conspiracy. It was linked to the conspiracy count. And the government argued that it did because this gun was easily accessible to defendant. Defendant had a motivation. He needed security to protect his cash-only business as well as the drug paraphernalia here. So that comes back, though, to my first question is, can you think of any instance where if you are a drug dealer and you're in a drug conspiracy and you have a gun at your house that you wouldn't also be convicted of this furtherance? Well, I think an instance would be, for example, there's actually a case from another circuit where a drug dealer had a handgun in close proximity to the drugs and in the upstairs bedroom of his home had a shotgun. And in that case, I think that the argument is definitely stronger that the shotgun is not connected to the drugs. Here, defendant's shotgun was a sawed-off shotgun that had no sporting purpose, which I think is different than perhaps a gun that's and this sawed-off shotgun was in the same room with everything related to the drug conspiracy. And the expert testimony at trial was that this gun, although large, could be concealed in a jacket and it was easily accessible in the bedroom. Except it had no ammunition. It did have no ammunition. And the expert, expert Baumgart, stated that while it had no ammunition, it could still be used for intimidation, although he did concede that under those circumstances, it really could not be used for protection. This is a mandatory five years. Correct. It's not a guideline thing. No, it's a mandatory consecutive sentence. I guess the other difficulty is this motel setup. If the kid has one room, the only place the dad can keep the gun is in, quote, his room, which is the front room. I mean, let's put it in the bathroom, which the kid also presumably has access to, and then he's going to get into some kind of thing with child welfare people. So it's not a situation where he has a mansion and he can put one gun upstairs and one over here. There is no other place for him if he decides to have a gun for whatever purpose. So can you draw any inferences from the fact that he didn't have the gun somewhere else? Well, I think, as you said, there was a limited space. Right. I mean, the way the motel room was set up, there was sort of a living room area, a front bedroom and the rear bedroom that belonged to the child. And the gun was where he kept all of the drug documents, not in the living area, but beyond. Really, I still have problems with the drug documents. How are the drug documents relevant when the drug documents, as I understand it, are not documents that you would use during a sale? Am I wrong about that? Well, I think that the jury could have drawn the inference that the price list that he had his handwritten notes that said sell this for this amount, he kept on hand to sell drugs, that he needed it there to know how much he was selling these drugs for. But nothing else? There was no – So we're down to this one piece of paper on which he's keeping a list of what he's selling, which he could be selling there, he could be selling somewhere else. We know he's selling. Right. That's correct. I mean, there was no cash found and there were no drugs themselves found at the motel. The documents, the rest of them are just irrelevant to the question of whether he's dealing there. That's correct. If the Court has no further questions, I will submit. Thank you. Thank you. You have a minute for rebuttal. This is not going to be technically rebuttal. All right. I'm just going to say something about the case of Booker, which I never mentioned in the briefing. The sentencing here took place before Booker. The sentencing was on December 13, 2004, and Booker came out the following month, January 2005. So if the conviction is upheld, does your client want a remand under the Ameline Booker? I truly have not yet asked him. Okay. If we reach that issue and we need to make that decision, then we would probably send a letter to you so that you could consult with your client on that. I appreciate that. Thank you. Thank you. Thank you, both counsel, for your argument this morning. The case of United States v. Rios is submitted. The next case for argument, United States v. Bargy.
judges: Berzon, McKeown, King